(163 App. Div. 720)

LYFORD v. WINTERS.   (No. 133–47.)

(Supreme Court, Appellate Division, Third Department. September 9, 1914.)

1. LIBEL AND SLANDER (§ 123*)—TRIAL—TAKING QUESTIONS FROM JURY.
    In an action for libel, though the court ruled that there could be no recovery upon one of the causes of action alleged, it properly refused to strike the article made the basis of such cause of action from the record, and to instruct the jury to disregard it, where the publication of such article was admitted and it was made a part of other causes of action and was a part of the history thereof tending to characterize and explain them.
    [Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 356–364; Dec. Dig. § 123.*]

2. LIBEL AND SLANDER (§ 123*)—TRIAL—TAKING QUESTIONS FROM JURY.
    On the trial of an action for libel, defendant was not entitled to have a nonsuit granted as to a particular part of a single article published concerning plaintiff, especially where the truth of such part either in letter or in spirit was not shown.
    [Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 356–364; Dec. Dig. § 123.*]

3. LIBEL AND SLANDER (§ 21*)—IDENTITY OF PERSON LIBELED.
    An article published by defendant in his newspaper referred to the fact that it had previously advised investors to look carefully into prop-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

erties before investing though offered or promoted· by well-known men like the officers of a bank of which plaintiff was president. An accompanying paragraph suggested that a civic betterment committee, of which plaintiff was also president, should institute a department of public warning to give protection to investors against the schemes of the up-to-date gold brick swindler. *Held,* that the article and the accompanying paragraph would be understood by any one reading it as referring to plaintiff in its reference to a gold brick swindler.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 103; Dec. Dig. § 21.*]

4. LIBEL AND SLANDER (§ 9*)—WORDS LIBELOUS PER SE.

Such article and paragraph were clearly libelous per se, since it is actionable per se to publish in writing or printing that a person is a swindler or a cheat or a dishonest person.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 80–90; Dec. Dig. § 9.*]

Appeal from Trial Term, Madison County.

Action by Frederick E. Lyford against Byram L. Winters. From a judgment on a verdict for plaintiff, and an order denying defendant's motion for a new trial on the minutes, defendant appeals. Affirmed.

See, also, 151 App. Div. 910, 135 N. Y. Supp. 1125.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

James Moore, of Oneida, for appellant. ·

Hinman, Howard & Kattell, of Binghamton, for respondent.

WOODWARD, J. The amended complaint sets out four alleged causes of action, three of them in libel and the fourth in slander. The first alleged cause of action is based upon a publication of an article in the defendant's newspaper, the Daily Free Press & Owego Daily Record, published at Waverly, N. Y., and which reads as follows:

"Civic Betterment of Waverly.

"A temporary organization was formed on Wednesday, Dec. 14th, for the purpose of considering complaints as to the nonenforcement of certain laws in Waverly. Mr. F. E. Lyford, President of the First National Bank, was made chairman of this society.

"In order to aid in this work, the Free Press-Record desires to call attention to the following conditions:

"Some few months ago the proprietor of the Tioga · House was indicted, found guilty and was fined fifty dollars for violation of the liquor tax laws. A few days after he was indicted, a license was taken out in the name of William Cushing. Soon afterwards Mr. Cushing died; and since that time the man who pleaded guilty and was fined for violating the liquor tax law has been in charge of the hotel and doing business under the license of the man who has been dead and buried nearly two months.

"The First National Bank, or one of its representatives, holds a mortgage on this property as collateral security for notes held by Mr. Lyford's bank, and this place has been kept open in order to protect this mortgage. It has been done against the wishes of the owner. He does not want a license in this place and he does not want it conducted in the manner in which it is now being run.

"We call attention to this matter in order that it may not be overlooked by the new organization."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The complaint set out by innuendo the matters which the plaintiff believed to be charged in the said article tending to hold him up to public hatred, contempt, and ridicule, as well as charging him with the crime of participating in a violation of the Liquor Tax Law (Consol. Laws, c. 34), and set out affirmatively that the plaintiff had no relation to the matters charged in reference to the license and the keeping of the hotel open. The answer of the defendant admits the publication of the article, denies the innuendo, and alleges the substantial truth of the statements contained in the article.

[1] The learned trial court held that there could be no recovery upon this first alleged cause of action, a ruling as favorable to the defendant as the facts would justify, but refused to instruct the jury that they should disregard the article set forth in the complaint as the basis of this cause of action, and it is urged on this appeal that the court erred in refusing this instruction. We are of the opinion that the court did not err in this regard. Assuming that the ruling in favor of the defendant·was correct, that the article was not libelous per se, and did not justify a verdict, still this article was made a part of the second and third alleged causes of action—it was a part of the history of the remaining causes of action and tended to characterize and explain them—and the court clearly could not withdraw it from the consideration of the jury if there was a good cause of action stated in either of the other causes stated. The motion of the defendant was "that that article be stricken from the record, and that the jury be instructed not to consider it at all in connection with the other causes of action." Obviously the court had no authority to strike from the record the article which was set forth as a part of each separate cause of action for libel, and which had been admitted by the defendant to have been published as alleged　Section 522, Code Civ. Proc.; Holmes v. Jones, 121 N. Y. 461, 466, 24 N. E. 701, and authorities there cited. The authority last above cited is invoked by the defendant, but a reading of the case shows that it does not support his contention, and it would be unprofitable to enter upon the discussion.

[2] We are next asked to hold that the court erred in refusing to grant the defendant's motion for a nonsuit "as to that part of the article set forth as the second cause of action herein, commencing, 'Some time ago Mr. Winters,' and dealing with the transaction with the First National Bank of Waverly, the deposit of the $100 check, notice of overdraft, and the whole of that subject." The second cause of action is based upon a long article appearing in the Free Press-Record, and admitted to have been published by the defendant, in which various alleged shortcomings of the plaintiff are more or less distinctly alleged, and the defendant's contention that he is entitled to have the article cut into parts and to have a nonsuit granted as to a particular part is novel, unsupported by authority, and will not be held by this court. In Holmes v. Jones, supra, the complaint charged as libelous, and of itself, a certain statement in the publication to the effect that a bill rendered for professional services was exorbitant and unjust, and, the defendant having established the truth of this allegation, the court held that he was entitled to have that much of the publication exclud-

ed from the consideration of the jury. But there the defendant showed the fair value of the services to be not to exceed $100. The plaintiff offered no evidence as to the value of the services, and the bill in question was for the sum of $500. Under these circumstances, the court properly held that it was error to submit this item to the jury because the plaintiff's claim was wholly unsupported by evidence. It has nothing to do with the facts as they appeared in the instant case, where the publication was admitted, and the defendant failed to show the truth of the allegations, either in letter or in spirit. We think the court did not err in refusing to dismiss the second cause of action.

[3, 4] We are equally of opinion that the court did not err in refusing to grant defendant's motion for a nonsuit in reference to the third cause of action. This action was based upon a publication in the Free Press-Record of an article alleged to have been taken from the United States Investor in reference to certain telephone securities, and a reference to the alleged fact that the Free Press-Record had previously advised its readers to look carefully into the properties before investing, even "if they are offered or promoted by men well known here, like the officers of the First National Bank of Waverly," and an accompanying paragraph which read as follows:

"As another suggestion to that Civic Betterment Committee, wouldn't it be a good idea to institute a sort of department of public warning to give some protection to the small investors of this section against the schemes of the up-to-date gold brick swindler?"

This language, in a printed publication, in connection with the articles which had preceded it, and which constituted a part of the third cause of action, was clearly libelous per se; no one in reading the several articles merged in the third cause of action could have any doubt that the plaintiff, the president of the First National Bank who had been chosen as chairman of the Civic Betterment Committee, was the person pointed out and intended to be referred to as the "up-to-date gold brick swindler," against whom it was suggested the community should be warned, and this language is clearly libelous per se.

"Merely to call a man a swindler or a cheat, or dishonest person, by word of mouth, is not actionable unless it be spoken of him in his trade or business, so as to have damaged him with his customers; but if such words are published in writing or printing they are actionable per se." Addison on Torts (Dudley & Baylies Ed.) vol. 2, p. 926.

This is the established rule, long recognized by our courts, and there is nothing in the record to take the case out of the rule. The contention of the defendant that the reference to the officers of the First National Bank was to be understood as complimentary is obviously an afterthought, and one which, under the circumstances, does little credit to the presumed intelligence of his readers.

We find no reason for disturbing the judgment, which is fully supported by the evidence; the rulings of the court being quite as favorable to the defendant as the facts would warrant.

The judgment and order appealed from should be affirmed, with costs. All concur.